Mr. Benneman, welcome back to Boston. Thank you, Your Honor, and good morning. My name is David Benneman. May it please the Court, I represent Lonnie Ball. I might ask one minute for rebuttal? You may have it. This is a sentencing appeal which focuses on the narrow issue of confluence between the federal sentencing guidelines and Pennsylvania law. Is subsection four of Pennsylvania's second degree robbery a crime of violence for purposes of the guidelines? This sentencing was decided about six weeks before the Supreme Court decision in Mathis. As is evident from the sentencing transcript, Judge Hornby struggled with how the Supreme Court may rule in Mathis, and he ultimately found that subsection four was divisible. I suggest to the Court that it is indivisible post-Mathis. Counsel, the government has two arguments here, one of which turns on whether subsection four is divisible. Are you going to address both? Because I would advise you to address both. Yes, Your Honor. Okay. My first point is that it is indivisible because when you look at the three ways of committing subsection four, they are or, and they are not elements, they are means, and that is borne out by the pattern of instruction from Pennsylvania. There is not any reason that a prosecutor in Pennsylvania would undertake a greater burden than necessary in proving a second degree robbery under subsection four, and since they can show it by any of three differing means, these are not elements but in fact means, and this matches with the analysis that this Court has already done in the Tavares case. Does that matter? That is the second point, and I suggest to you it does indeed, and it matters because two of the three means can be satisfied without the violent force as required by Johnson 1. Yet, by using the divisible approach, the Court at sentencing was rolled into the modified categorical approach. Explain why, let's assume it's indivisible. You've still got to establish that at least one of the methods doesn't satisfy the definition of the third method, that is, instilling fear, is not sufficient, and I say that because as this Court has written in several opinions, by your honor, we use the state law in making that determination. Right. How does intentionally putting someone in fear of bodily injury, as Pennsylvania defines bodily injury, how is that not the material equivalent of threatening someone with violent force? Because there is no actual threat of violent force. If you are intentionally putting someone in fear, that... It is inferred. So when we look at the lead case from Pennsylvania, that's the Schwartz case. No, that is not the lead case. That is a lower court decision that was decided without benefit of the higher court decision in the George case. It may be the case that you think is most factually similar, but it's hardly something that the federal court would necessarily pay deference to. I agree with you, your honor, that it is exactly as you said, but also as you recognize, it is illustrative of how the courts would rule. The point being... Well, even at that, I'm not sure I would derive the lesson from it that you do, but go ahead and make your argument. Well, what I suggest to you is this. In Pennsylvania, if the victim of the robbery is intimidated intentionally, if intent can be inferred from that... I thought that element says you have to intentionally put someone in fear of bodily injury. I agree with you, but... And it's not just any fear, it's fear of bodily injury. That is correct, but that fear can be developed without there being any threat, and so the court would have to infer the threat. So, for example, if I am a panhandler and I come up to you and I say, give me some money, and you feel that implicit with that is, or I will do something violent, what is First Amendment panhandling has turned into a robbery. No, you've left out the intentionality element. The panhandler has to, as I understand Pennsylvania law, the panhandler has to be found by the jury in order to be convicted. He has to be found to have intentionally caused the person to fear the bodily injury, which to me, I'm having trouble distinguishing that from threatening other than that I suppose if you have a gun in your pocket, like in the old movies and you stick it out, you're threatening with violent force, where if you have your finger in your pocket, you're intentionally causing them to fear violent force. Wouldn't either one of those be a threat of violent force? I suggest to you without the residual clause there would not be, because the example of another Pennsylvania case is holding a cell that's not a weapon. And so there is not an actual threat of violent force. There is a perception by a victim or even an objective perception. But going back to the panhandler, if the jury finds that the panhandler intended to cause fear because that was a beneficial way of having people hand out dollar bills, that could be a conviction. But the panhandler himself needn't enunciate that intent. But suppose I aim a gun at you that is unloaded. You don't know it's unloaded. Isn't that a threat of violent force? The distinction comes that's the Wendelton situation, Your Honor. That's by means of you are actually using the gun. And so you may be able to give examples where one instills fear, but not in all examples does it instill fear. Give me an example where you would instill a fear, you would intentionally instill a fear of bodily injury and yet you would not be threatening force. And please do so in the context that this is a robbery statute and the robbery has to actually take place. Now answer the question. The Schwartz case is the exact fact pattern. A person with a hat and sunglasses walks up to the teller with a bag and says, fill it. What's appealing, what helps you about that case is that when you read the facts, we think, well, was he intentionally threatening anything? She just read the teller, he or she read too much into the sunglasses and the fraughtness of the situation. And yet we're told under Pennsylvania law to have convicted him of that, the jury would have to have found that he intentionally induced that fear. And Brown and Austin tell us that force or threatened force is always an element. So although the facts are appealing when you understand that to be convicted what the jury would have to find, I get back to I have trouble distinguishing that from a threatened use of force. I understand if you look at Collins' case, which is the criminal threatening in Maine, it was with a dangerous weapon, you imported a weapon again. So I just suggest to you that we don't have a situation where merely instilling fear rises to the level, even though it's intentional. I accept that it's intentional. But the question is, is Pennsylvania robbery fourth a lower standard of robbery? And I suggest to you it is. You've reserved a minute. Margaret McGoy for the United States. The court has correctly identified that the nub of this case is the phrase intentionally puts another in fear of immediate bodily injury. That is not the prong of the Pennsylvania statute under which the defendant was convicted, but it doesn't make any difference because our view is that all three ways of violating subsection 4 of the Pennsylvania statute are categorically crimes of violence. So the court need not dip its toe into the murky waters of divisibility because the analysis stops there. The reason we say, excuse me, counsel, can you cite to me any Pennsylvania case that would suggest that subsection 4 is broader than the fourth clause of 4B1.2A? Any Pennsylvania case? Can you cite me to anyone that is broader than the definition? The closest I can come is the language of Schwartz, which has been reiterated as recently. Well, Schwartz clearly is not a Supreme Court of Pennsylvania. So that's why I'm asking any Supreme Court case that you can cite to this court. I don't think the Pennsylvania courts up to this point have been concerned with the issue of whether any of their statutory provisions satisfy the sentencing guidelines provisions of climate violence. So in some ways, to coin Judge Cata, we are left with predicting how they would come out with that, but I think we can make a very accurate prediction of four ways. One is the statutory language itself. It requires proof that the defendant intentionally put fear of immediate bodily injury. Well, it's the defendant would basically extract the word fear from that phrase, but it's not fear of anything. It's not fear that the weather might change. It's not fear that the lights might go off. It's fear of immediate bodily injury. So that's one way we can tell that the third prong is categorically violent. A second way we can tell is by the structure of Section 4 itself. It has basically gradations of violence. The most violent is the actual infliction of bodily injury. The second is the threatened infliction of immediate bodily injury, which clearly satisfies Johnson 1. And then the third is conduct that is not an actual threat. It's not the gun in the pocket. It's not the raised fist. It's not the or else. But it is menacing conduct that is the equivalent of a threat. It is the constructive use of fort. And what is key to that is, as a defendant must intend to have it be interpreted as a threat of physical injury. Could you stay with that for just a minute? Because you've made it, Pennsylvania distinguishes between threatened use of force and this intentional putting of a person. Correct. But for purposes of the federal determining whether it qualifies, we would actually have to find that they're the equivalent, that they're the same. Yes. So how do you, there's a suggestion that they're not being redundant. There's a suggestion that Pennsylvania draws a material difference. But we would then throw that material difference out the window as irrelevant under ACCA. Well, where I get that the third prong is also violent in part is from the Schwartz case and cases that have cited it, in which they say that when the defendant commits aggressive actions, which implicitly carry with them the threat of immediate bodily injury, that satisfies the third prong. Counsel, if Schwartz doesn't help your opposing counsel, how does Schwartz help you? Well, because that language has been carried forward in Pennsylvania case law interpreting subsection four and the threat of immediate physical injury. So there is a Supreme Court case that says that in Pennsylvania? There's the Gardner case from 2013 that is cited in our brief. And Schwartz has been addressed by a number of Supreme Court cases. Again, we don't have an authoritative Pennsylvania Supreme Court saying this is a crime of violence for purposes of federal guidance. We have to look at how they have interpreted their statutory language. And they have interpreted that third prong to be the equivalent of an actual threat. It is menacing conduct that the defendant intends to be a threat of physical injury and which in most instances the victim perceives as a threat of physical injury. And then the other way that we get to the conclusion that categorically all three ways of violating the Pennsylvania statute are violent is by all of the other cases interpreting similar robbery statutes in which the courts have ruled that whether it is an actual or a threat of physical injury to another person, that that satisfies the career offender provision. You mean the federal cases from the circuit? Correct. Correct. Two of which are cited in the 28th jailer. In interpreting the state law, suppose it's not, as you say, 100 percent, which we don't have something directly on point saying it's an HACA equivalent. But we're not actually engaged in that inquiry. We're engaged in saying it's an element of the crime. The use, attempted use, or threatened use of physical force, as defined by Johnson. What's our standard in interpreting Pennsylvania law? How clear does the law need to be? Because there's some suggestion in Mathis that perhaps if it's unclear, the tie goes to the defendant. Well, I've read a number of your opinions, Judge Cata, and I'm not absolutely sure what the federal standard of interpreting a state statute and relying on state court interpretations of it you have said you are forced to predict. But I think the ways of predicting that this statute is violent are very clear because the Pennsylvania courts have said repeatedly that intentionally engaging in conduct that is intended to place the victim in fear of bodily injury qualifies. So that is, it's the threat language. That whether it is actually threatening or whether it is implicitly threatening, it is a threat of physical force, and that satisfies the career offender definition. I would be happy to address the divisibility issue, but in the government's view that is not necessary, that all three means of violating the statute are violent and the court should affirm. And why did the government put forward this theory below? On the theory of we should always have a backup argument. And the backup argument was that if you, if Judge Hornby should have concluded that it wasn't categorically all three means violent, that we would be permitted to make the divisibility argument and we would be able to prove that the defendant was actually convicted of the more serious prong, and that was the prong of threat of bodily injury, but that was a backup argument, Judge Lynch. If there are no other questions, the government will urge the court to affirm. Thank you. Mr. Veneman. We have not gotten to the bodily injury prong, and Pennsylvania includes bodily injury that involves force snatching, which is prong five of the robbery statute with any touching. And the victim runs after the snatcher and falls, that is bodily injury. Falls and skins their knee. And yet that is not violent force. And so that prong also allows for bodily injury without use of violent force. Anything else? Thank you. Thank you.